**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.: _22-80119-Cr-Rosenberg/Reinhart_

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **RANDALL LENZ,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## PLEA AGREEMENT

The Department of Justice, Tax Division ("this Office") and Randall Lenz (hereinafter referred to as the "defendant") enter into the following agreement:

1.  The defendant agrees to plead guilty to Count 1 of the Information which charges him with the willful filing of a materially false tax return, in violation of 26 U.S.C. § 7206(1).

2.  The defendant is aware that the sentence will be imposed by the Court after considering the advisory Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a pre-sentence investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines. The defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose a sentence within that advisory range; the Court is permitted to tailor the

1

ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory range. Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

3.   The defendant understands and acknowledges that upon a conviction for the charge specified in paragraph 1, the Court may impose a statutory maximum term of imprisonment of up to three (3) years, followed by a term of supervised release of up to one (1) year. In addition to a term of imprisonment and supervised release, the Court may impose a fine of up to $250,000 or twice the gross gain or gross loss resulting from the offense, and restitution.

4.   The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 3 of this agreement, a special assessment in the amount of $100 will be imposed on the defendant. The defendant agrees that any special assessment imposed shall be paid at the time of sentencing.

5.   This Office reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offense(s) committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

6.   This Office agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative

2

and timely acceptance of personal responsibility. If at the time of sentencing the defendant's offense level is determined to be 16 or greater, this Office will file a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. This Office, however, will not be required to make this motion and these recommendations if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office and the Court of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government after entering into this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

7.   This Office and the defendant agree that, although not binding on the probation office or the Court, they will jointly recommend that the Court make the following findings as to the guideline calculations:

(a)   Base Offense Level:   the parties agree that the base offense level applicable to the defendant's conduct is level twelve (12) pursuant to Sentencing Guidelines §§ 2T1.1(a)(1) and 2T4.1(D), because the tax loss in this case is between $15,000 and $40,000.

(b)   Tax Loss:   the parties agree that the total tax loss arising from the defendant's participation in the offense of conviction is between $38,000 and $39,000.

3

(c)   No Other Provisions Apply:   the parties agree that no other Guidelines provisions apply with respect to defendant's offense level. The parties further agree that neither a downward nor upward departure is warranted, and neither party will seek such a departure or adjustment, except that the government may in its sole discretion seek a departure under §5K1.1, as discussed in paragraph 9.

Both parties are free to argue for any sentence at sentencing.

8.   The defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, this Office, or the probation office, is a prediction, not a promise, and is not binding on this Office, the probation office or the Court. The defendant understands further that any recommendation that this Office makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety. The defendant understands and acknowledges that the defendant may not withdraw his plea based upon the Court's decision not to accept a sentencing recommendation made by the defendant, this Office, or a recommendation made jointly by the defendant and this Office.

9.   The defendant agrees that defendant shall cooperate fully with this Office by:

(a)   providing truthful and complete information and testimony, and producing documents, records and other evidence, when called upon by this Office, whether in interviews, before a grand jury, or at any trial or other court proceeding; and

(b)   appearing at such grand jury proceedings, hearings, trials, and other judicial proceedings, and at meetings, as may be required by this Office.

4

This Office reserves the right to evaluate the nature and extent of the defendant's cooperation and to make the defendant's cooperation, or lack thereof, known to the Court at the time of sentencing. If in the sole and unreviewable judgment of this Office the defendant's cooperation is of such quality and significance to the investigation or prosecution of other criminal matters as to warrant the Court's downward departure from the advisory sentence calculated under the Sentencing Guidelines, this Office may at or before sentencing make a motion consistent with the intent of Section 5K1.1 of the Sentencing Guidelines prior to sentencing, or Rule 35 of the Federal Rules of Criminal Procedure subsequent to sentencing, reflecting that the defendant has provided substantial assistance and recommending that the defendant's sentence be reduced from the advisory sentence suggested by the Sentencing Guidelines. The defendant acknowledges and agrees, however, that nothing in this Agreement may be construed to require this Office to file any such motion(s) and that this Office's assessment of the nature, value, truthfulness, completeness, and accuracy of the defendant's cooperation shall be binding insofar as the appropriateness of this Office's filing of any such motion is concerned. The defendant understands and acknowledges that the Court is under no obligation to grant the motion(s) referred to in this agreement should the government exercise its discretion to file any such motion. The defendant also understands and acknowledges that the Court is under no obligation to reduce the defendant's sentence because of the defendant's cooperation.

10.     The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status, if the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, and, in some cases, removal is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including the

defendant's attorney or the Court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. The defendant nevertheless affirms the desire to plead guilty regardless of any immigration consequences that the plea may entail.

11.     The defendant is aware that Title 18, United States Code, Section 3742 affords the defendant the right to appeal the conviction and sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by this Office in this plea agreement, the defendant thereby waives all rights conferred by Section 3742 to appeal the conviction and any sentence imposed, including any restitution or forfeiture order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute. The defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b). However, if the government appeals the defendant's sentence pursuant to Section 3742(b), the defendant shall be released from the above waiver of appellate rights. By signing this agreement, the defendant acknowledges that he has discussed the appeal waiver set forth in this agreement with his attorney. The defendant further agrees, together with this Office, to request that the district Court enter a specific finding that the defendant's waiver of his right to appeal the sentence to be imposed in this case was knowing and voluntary.

12.     In the event the defendant withdraws from this plea agreement prior to pleading guilty or breaches the agreement before or after he pleads guilty to the charges identified in paragraph 1 above or otherwise fails to fully comply with any of the terms of this plea agreement, this Office will be released from its obligations under this agreement, and the defendant agrees and understands that: (a) the defendant thereby waives any protection afforded by any proffer letter agreements between the parties, Section 1B1.8 of the Sentencing Guidelines, Rule 11(f) of the

6

Federal Rules of Criminal Procedure, and Rule 410 of the Federal Rules of Evidence, and that any statements made by the defendant as part of plea discussions, any debriefings or interviews, or in this agreement, whether made prior to or after the execution of this agreement, will be admissible against the defendant without any limitation in any civil or criminal proceeding brought by the government; and (b) the defendant stipulates to the admissibility and authenticity, in any case brought by the United States in any way related to the facts referred to in this agreement, of any documents provided by the defendant or the defendant's representatives to any state or federal agency and/or this Office.

13.     The defendant confirms that the defendant is guilty of the offense to which the defendant is pleading guilty; that the defendant's decision to plead guilty is the decision that the defendant has made; and that nobody has forced, threatened, or coerced the defendant into pleading guilty. The defendant affirms that the defendant has reviewed this agreement and enters into it knowingly, voluntarily, and intelligently, and with the benefit of assistance by the defendant's attorney.

14.     This is the entire agreement and understanding between this Office and the defendant. There are no other agreements, promises, representations, or understandings.

DAVID A. HUBBERT
Deputy Assistant Attorney General
Department of Justice, Tax Division

Date: 7/29/2022           By: _____
                               Parker Tobin
                               Casey Smith
                               Jessica Kraft
                               Nicholas Schilling

7

Trial Attorneys, U.S. Department of Justice

Date: _07/27/2022_                By: _____

Randall Lenz
Defendant

Date: _7/26/2022_                 By: _____

Thomas D. Bever
Anthony J. Rollins
Attorney for Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 22-80119-Cr-Rosenberg

UNITED STATES OF AMERICA

v.

RANDALL LENZ,

   Defendant.
_____/

## STIPULATED FACTUAL BASIS

The Department of Justice, Tax Division, and the defendant, **RANDALL LENZ**
("**LENZ**"), stipulate to and agree not to contest the following facts, and stipulate that such facts,
in accordance with Rule 11(b)(3) of the Federal Rules of Criminal Procedure, provide a sufficient
factual basis for the plea of guilty to Count One of the Criminal Information, which count charges
him with willfully filing a materially false individual income tax return, in violation of 26 U.S.C.
§ 7206(1).

**LENZ** is charged with willfully filing a materially false return based on the following
facts:

1. During 2020, **LENZ** was a resident of Boca Raton, Florida, in Palm Beach County, Florida.
   Previously, **LENZ** was a resident of Pompano Beach, Florida.

2. **LENZ** was a licensed Certified Public Accountant and attorney, with more than thirty
   years of experience in tax.

3. Jack Fisher ("Fisher"), together with the assistance of Kate Joy and others, organized,
   marketed, promoted, and sold illegal tax shelters, which facilitated high-income

1

taxpayers in claiming unwarranted and inflated charitable contribution deductions in connection with the donation of a conservation easement over land.

4. Fisher's shelters operated in a similar manner: he created an LLC ("the Fund"), and through the Fund acquired land or an entity that owned land. Fisher and others then sold units in the Funds to high-income clients. Fisher next caused a conservation easement to be placed over the majority of the land, with the remainder of the land being considered the "residual property." Then, Fisher obtained an appraisal of the easements. Ultimately, individuals who purchased units in the Funds received documentation, including Forms K-1, supporting tax deductions in amounts between 4 and 4.5 times the amount of money they paid for their units.

5. From at least 2015 through 2019, **LENZ** marketed Fisher's Funds to his clients, and facilitated their purchase of units in Fisher's Funds. In return, Fisher and his entities paid **LENZ** a commission of 12% of the money his clients paid for their units. In all, **LENZ** received more than $700,000 in such commissions.

6. **LENZ** knew that the Funds seemed too good to be true.

7. Because of his tax training and experience and because of independent research he conducted into syndicated conservation easements, **LENZ** knew that the law required that the Funds must have a business purpose or economic substance to be legitimate, or else be disregarded under federal tax law.

8. When **LENZ** questioned Fisher about the economic substance of the deals, Fisher pointed only to the residual property, which Fisher claimed would be developed or sold for economic gain.

9. Nevertheless, despite multiple requests for information from Fisher about progress on the development of residual properties and the prospective dates on which a return from those properties would be realized, **LENZ** received no substantive answers. Instead, Fisher only referenced the IRS statute of limitations.

10. Accordingly, at least as early as 2018, **LENZ** knew, and was deliberately ignorant of the fact, that Fisher's Funds had no economic substance, that they were disregarded entities under federal tax laws, and that the purchasers of units in the Funds were not entitled to deductions in the amounts reported on the documentation provided by Fisher's Funds.

11. Nevertheless, **LENZ** purchased a unit in a Fisher Fund called Eastern Sierra Holdings for tax year 2018 for $25,000.

12. On or about October 14, 2019, **LENZ** filed an individual income tax return for tax year 2018, which reported on Schedule A, Itemized Deductions, Line 12, gifts to charity other than by cash or check of $114,392. That number included a deduction in the amount of $111,892, which flowed through from a Form 8283, Noncash Charitable Contributions, based on **LENZ**'s purchase of the Eastern Sierra Holdings unit.

13. When he filed his 2018 individual income tax return, **LENZ** knew, and was deliberately ignorant of the fact, that Eastern Sierra Holdings had no economic substance, that it was a disregarded entity under federal tax laws, and that the individuals who had purchased units in the Fund were not entitled to charitable deductions in the amounts reported on the documentation provided by Fisher's Funds. Specifically, Lenz knew he was not entitled

to a charitable deduction in the amount of $111,892 based on his purchase of the Eastern Sierra Holdings unit and that his income tax return was therefore false.

14. **LENZ** purchased a unit in a Fisher Fund called Bay Creek Acquisitions, LLC for tax year 2019 for $25,000.

15. On or about October 7, 2020, **LENZ** prepared and filed an individual income tax return for tax year 2019 from his home in Boca Raton, Florida, in Palm Beach County, Florida, in the Southern District of Florida. That return reported on Schedule A, Itemized Deductions, Line 12, gifts to charity other than by cash or check of $90,650. That number included a deduction based on **LENZ**'s purchase of the Bay Creek Acquisitions unit.

16. When he filed his 2019 individual income tax return, **LENZ** knew, and was deliberately ignorant of the fact, that Bay Creek Acquisitions, LLC had no economic substance, that it was a disregarded entity under federal tax laws, and that the individuals who had purchased units in the Fund were not entitled to charitable deductions in the amounts reported on the documentation provided by Fisher's Funds. Specifically, Lenz knew that he was not entitled to a charitable deduction in the amount of $90,650 based on his purchase of the Bay Creek Acquisitions unit, and that his income tax return was therefore false.

DAVID A. HUBBERT
Deputy Assistant Attorney General
Department of Justice, Tax Division

Date: 7/29/2022

By: _Jessica Kraft_
Parker Tobin
Casey Smith
Jessica Kraft
Nicholas Schilling
Trial Attorneys, U.S. Department of Justice

4

Date: 07/27/2022   By: _____

          Randall Lenz
          Defendant


Date: 7/26/2022    By: _____

          Thomas D. Bever
          Anthony J. Rollins
          Attorney for Defendant

5